IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **JAMAR SCOTT,** | ) | Civil Action No. 7:12-cv-00469 |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **WARDEN RANDALL C.** | ) | |
| **MATHENA, et al.,** | ) | By:   Hon. Michael F. Urbanski |
|    Defendants. | ) |        United States District Judge |

Jamar Scott, a Virginia inmate proceeding pro se, filed a motion for a temporary restraining order ("TRO") to force defendants, the Warden and staff of the Red Onion Staff Prison ("ROSP"), to change plaintiff's security classification and access to rehabilitative programming. ROSP officials have housed plaintiff in administrative segregation since April 2011 and will not release him to the "Construction Living Program," allegedly in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

The purpose of a TRO is to preserve the status quo and avoid possible irreparable injury to a party until a hearing may be conducted. See Steakhouse, Inc. v. City of Raleigh, 166 F.3d 634, 637 (4th Cir. 1999) ("The grant of interim [injunctive] relief is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it."). A court may issue a TRO without providing notice where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition[.]"[1] Fed. R. Civ. P. 65(b)(1)(A). A movant must also establish (1) that he is likely to succeed on the merits, (2) that the balance of equities tips in his favor, and (3) that an

---

[1] Plaintiff does not certify in writing any effort he made to give a defendant notice of the motion for a TRO, and he does not explain why notice should not be required. Fed. R. Civ. P. 65(b)(1)(B). See Jourdan v. Jabe, 951 F.2d 108, 109-10 (6th Cir. 1991) (holding that a pro se litigant is not entitled to special consideration to excuse a failure to follow a straightforward procedural requirement that a lay person can comprehend as easily as a lawyer).

injunction is in the public interest.  Winter v. Nat'l Res. Defense Council, Inc., 555 U.S. 7, 19-22 (2008).

After weighing these considerations, the court finds that plaintiff is not entitled to a TRO. Plaintiff does not have a constitutional right to be placed in a specific security classification, and custodial classifications do not create a major disruption in a prisoner's environment.  Sandin v. Conner, 515 U.S. 472, 486-87 (1995).  States may create liberty interests protected by the Due Process Clause where the freedom from restraint imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. . . ."  Id. at 484.  To show the deprivation of a liberty interest regarding custody classifications, an inmate must show either that the conditions exceed the imposed sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, or that the confinement creates an atypical or significant hardship and that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint.  Id. at 483-84.

Based upon the alleged facts, plaintiff's classification or inability to participate in prison programs does not exceed a sentence in such an extreme way as to give rise to the protection of the Due Process Clause by its own force.  See Beverati, 120 F.3d at 503 (holding that administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell; no outside recreation; no educational or religious services; and less food was not so atypical as to impose significant hardship).  Nor does plaintiff's security classification constitute an "atypical and significant" hardship in relation to the ordinary incidents of prison life because plaintiff has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification.  See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (rejecting a prisoner's argument that a pending warrant and detainer adversely affected his prison classification and

qualification for institutional programs because not "every state action carrying adverse consequences for prison inmates automatically activates a due process right"). Even though plaintiff alleges that ROSP staff violates VDOC procedures by keeping him in administrative segregation and preventing his participation in programs, a claim that prison officials have not followed their own independent policies or procedures also does not state a constitutional claim. See United States v. Caceres, 440 U.S. 741, 752-55 (1978); Riccio v. Cnty. of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue).

      The balance of equities presently tips in defendants' favor because they are more able than plaintiff or the court to presently decide how to allocate prison resources and how to incarcerate and monitor plaintiff. Involving a federal court in the day-to-day administration of a prison is a course the judiciary generally disapproves of taking. See, e.g., Bell v. Wolfish, 441 U.S. 520, 540 n.23, 548 n.29 (1979) (explaining that maintaining security and order and operating institution in manageable fashion are considerations peculiarly within the province and professional expertise of corrections officials). The public's interest is better served by not presently interfering with penal administration, especially since plaintiff's has not yet filed a Complaint. Accordingly, the court finds no adequate basis exists to disturb the status quo, and plaintiff's motion for a TRO is denied.[2]

---

[2] The action will be stricken from the active docket because plaintiff did not file a complaint with the motion for a TRO.

   The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to plaintiff.

            Entered: October 15, 2012

            /s/ Michael F. Urbanski

            Michael F. Urbanski
            United States District Judge